UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

VICTOR DRAKE,

Plaintiff,

v. Case No. 24-cv-249-pp

TOMMY ONJUKKA,

Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 40)**

---

Plaintiff Victor Drake, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant, Dr. Tommy Onjukka, violated his constitutional rights. The court screened the amended complaint and allowed the plaintiff to proceed on an Eighth Amendment claim based on allegations that the defendant delayed treating the plaintiff's painful chipped and loose tooth. Dkt. No. 20 at 5-6. The defendant has filed a motion for summary judgment. Dkt. No. 40. The court will deny the defendant's motion.

## I. Facts[1]

The plaintiff was incarcerated at Green Bay Correctional Institution during the events described in the complaint. Dkt. No. 42 at ¶1. The defendant

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

works for the Wisconsin Department of Corrections (DOC) as a dentist supervisor at Green Bay. Id. at ¶2.

To request dental care in prison, incarcerated individuals must submit a dental services request (DSR) to the dental services unit (DSU). Id. at ¶3. Once the DSR is received and triaged, a dentist assigns a specific wait list category to the request: urgent, essential, routine, prosthetic or hygiene. Id. at ¶¶3-4. Sometimes a patient submits a health services request (HSR) to the health services unit (HSU) requesting dental care. Id. at ¶5. In that case, HSU staff sends the request to the DSU, and a dentist triages the request. Id.

The "essential wait list" is reserved for patients with a dental condition which is chronic, often symptomatic and which, if not completed within eight weeks, could result in an acute episode. Id. at ¶6. Examples include advanced caries (cavities), teeth with hopeless prognosis and infected teeth. Id. Patients on the essential wait list usually are seen within eight weeks, as time, staffing and resources allow. Id. at ¶7. The "routine wait list" is designated for dental conditions such as cavities, broken or cracked fillings, restorative care or other dental treatment, where delay in treatment would not result in a serious health risk or discomfort to the patient. Id. at ¶8. Given the sheer amount of dental care needs in a prison, patients on the routine wait list are typically seen within forty weeks,. Id. at ¶9. Unless a change in a clinical condition alters a patient's dental needs such that they require emergency treatment, patients are seen in order per the waitlist. Id. at ¶10.

On August 10, 2023, the plaintiff had an appointment for a possible extraction. Id. at ¶11. He refused treatment on that date and claimed he was no longer in pain. Id.

Four days later, on August 14, 2023, the plaintiff submitted a DSR requesting an annual exam/x-rays and an extraction, but did not note having any pain. Id. at ¶12. The DSR states that the plaintiff "chipped a molar on the top right and it needs to be pulled ASAP." Dkt. No. 43-2 at 11. In response to the DSR, the defendant added the plaintiff to the routine waitlist with a note to evaluate if an extraction was needed. Dkt. No. 42 at ¶13. Two weeks later, on August 28, 2023, the plaintiff submitted a DSR in which he said he was in extreme pain and needed his tooth removed. Id. at ¶14. The defendant added the plaintiff to the essential waitlist. Id.

Around that time, due to staffing vacancies, the waiting period at Green Bay was longer than the recommended guidelines. Id. at ¶15. Accordingly, patients on the essential waitlist waited more than eight weeks to be seen. Id. According to the defendant, the plaintiff's dental needs were not emergent and did not necessitate emergency treatment. Id. at ¶16. The defendant was the sole dentist for Green Bay's DSU at the time, and he also filled in a day or two per week at Kettle Moraine Correctional Institution, where there was no doctor on site for dental services. Id. at ¶17.

After the defendant placed the plaintiff on the essential waitlist on August 28, 2023, the plaintiff submitted various DSRs, some related to his pain and others with routine dental questions, such as flossing and record

reviews. Id. at ¶19. Staff responded to the plaintiff's DSRs and stated that he would be evaluated at his next appointment. Id. at ¶20. The plaintiff also was told that he could purchase over-the-counter pain medication at the canteen and that he could ask to see nursing staff if he believed he had an infection. Id. at ¶21. HSU staff saw the plaintiff twice in November 2023 for dental pain. Id. at ¶22.

On January 2, 2024, the defendant saw the plaintiff for an appointment. Id. at ¶24. The defendant recommended and performed an extraction of the plaintiff's tooth 4. Id. at ¶25. Based on a clinical exam and x-rays, the tooth showed unrestorable caries into the pulp. Id.

Two days later, on January 4, 2024, the plaintiff submitted a DSR asking to be placed back on the essential wait list for another cracked tooth. Id. at ¶26. The defendant cannot recall if the plaintiff mentioned another problematic tooth during his January 2, 2024 appointment. Id. Typically, the tooth causing the most pain is treated first, unless there are multiple teeth in the same area that could be treated during the same visit. Id. at ¶27. In response to the January 4 DSR, the defendant placed the plaintiff back on the essential waitlist. Id. at ¶28. On February 22, 2024, the defendant extracted the plaintiff's tooth 19. Id.

The dental staff at Green Bay work hard given time constraints and limited staff to try and accommodate all incarcerated individuals within the recommended guidelines per policy. Id. at ¶29. Based on DSU records, in January 2024 there were about eighty incarcerated individuals on the essential

waitlist, with twenty incarcerated individuals whose appointments were considered "overdue" after eight weeks. Id. at ¶30. Currently, the number of incarcerated individuals on the essential waitlist is half that. Id.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

The defendant contends that the plaintiff's chipped tooth was not a serious medical condition. Dkt. No. 41 at 9-10. He also contends that the plaintiff's refusal of treatment on August 10, 2023 disproves his deliberate indifference claim. Id. at 10-11. According to the defendant, the plaintiff's own actions prolonged his pain and "undermine[ ] the heart of his deliberate indifference claim[.]" Id. at 11. The defendant also contends that the delay in treatment was an unavoidable circumstance at the institution, and that he treated the plaintiff as efficiently as possible given that he was the only dentist on staff and had double the number of patients. Id. at 12-13. Finally, the defendant contends that he is entitled to qualified immunity. Id. at 13-16.

The plaintiff did not file a response brief, but on October 2, 2025, he did file a response to the defendant's proposed findings of fact, dkt. no. 46, and a declaration, dkt. no. 45. The plaintiff's response to the defendant's proposed facts says that he "affirms" all the defendant's facts except that he disputes that his dental needs did not require emergency treatment. Dkt. No. 46 at ¶16. The plaintiff avers that on August 10, 2023, he refused a tooth extraction because he no longer was in pain. Dkt. No. 45 at ¶3. He says that on August 14, 2023, he submitted a DSR after chipping a *different* tooth while eating breakfast. Id. at ¶4. The plaintiff says that a couple weeks later, he was in excruciating pain and filled out another DSR and was placed on the essential

wait list. Id. at ¶5. The plaintiff states that the HSU saw him three times for dental nerve pain while he was on the essential wait list. Id. at ¶7. He says that he filled out several DSRs but that they were returned with the same response, "Will see you as soon as practical." Id. at ¶8. The plaintiff avers that on December 12, 2023, he filed an inmate complaint and that a month later, it was affirmed. Id. at ¶9. He says that on January 2, 2024, his tooth was pulled, eighteen weeks after he was placed on the essential wait list and ten weeks over the "max wait time." Id. at ¶10. The plaintiff says that during those eighteen weeks he went through "agonizing pain," missed meals and sleep and lost ten pounds. Id.

Any reply by the defendant in support of his motion was due within fourteen days of service of the plaintiff's responsive materials—or by October 16, 2026. Civil Local Rule 56(b)(3). Without filing a motion for an extension of time, the defendant filed a reply on October 30, 2025, two weeks *after* the deadline to do so. Dkt. No. 48. The court will not consider the defendant's reply.

The court analyzes a plaintiff's claim that the defendant was deliberately indifferent to his serious medical needs under the Eighth Amendment's cruel and unusual punishments clause. Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. In the context of a

claim that prison staff were deliberately indifferent to a plaintiff's serious medical need, the objective component requires the plaintiff to show that his medical need constitutes a risk of an objectively serious harm. Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (citing Balsewicz v. Pawlyk, 963 F.3d 650, 654 (7th Cir. 2020)).

To satisfy the subjective component, the plaintiff must demonstrate that the defendant had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart, 14 F.4th at 763 (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)). The plaintiff does not need to show that he was "literally ignored." Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citing Sherrod v. Lingle, 223 F.3d 605, 611 (7th Cir. 2000)). "[A] doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference[.]" Id. (citing Estelle, 429 U.S. at 104). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." Id. (citing Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008) (reversing

summary judgment for defendants where plaintiff did not receive treatment for painful broken nose for nearly two days)).

Although the defendant describes the plaintiff's dental condition as a chipped tooth that was not a serious medical condition, it is undisputed that on August 28, 2023, the defendant placed the plaintiff on the essential waitlist after the plaintiff submitted a DSR stating, "My chipped tooth is loose & exposing my cavity and causing me severe pain. I cannot eat or sleep. Please help me!" Dkt No. 43-2 at 12. Division of Adult Institutions (DAI) Policy 500.40.02 (Triage of Dental Service Requests and Prioritizing Appointments) provides that "essential" dental conditions are "chronic, asymptomatic and which if not complete within 8 weeks could result in an acute episode. Examples include: advanced caries, teeth with hopeless prognosis, infected teeth and care for [incarcerated persons] which is relevant to their chronic medical conditions." Dkt. No. 43-1 at 2. For the next eighteen weeks, the plaintiff submitted DSRs describing severe pain and not being able to eat, asking for help.[2] The plaintiff's condition satisfies the objective standard of an

[2] On September 3, 2023, the plaintiff submitted a DSR that said, "I have not eaten solid food in a week because my chipped tooth is causing pain. Pain 10/10 please help." Dkt. No. 43-2 at 13. On September 29, 2023, he submitted a DSR that said, "I think I have an abscess on my chipped tooth. I [have] been in pain and have not ate in 3 days because the pain is severe and unbearable. Please help me. URGENT!!!" Id. at 16. On October 3, 2023, the plaintiff submitted a DSR stating, "Severe tooth & head pain 9/10. Please help me!" Id. at 17. On October 27, 2023, the plaintiff submitted a DSR that said, "I woke up with a swollen jaw on the left side by the abscess in my tooth. It is painful and I can't get the taste of it out of my mouth. It's been about 2 months & it's getting unbearable. When will I be seen?" Id. at 20. On November 17, 2023, the plaintiff submitted a DSR that said, "I'm having severe den[t]al pain with the tooth I wrote about 3 months ago. It is painful and unbearable. I cannot eat

Eighth Amendment claim. See Berry, 604 F.3d at 440 (tooth decay, serious pain and tooth that required immediate root canal when finally seen by dentist constituted serious medical need) (citing Board v. Farnham, 394 F.3d 469, 480-81 & n.4, 482-83 (7th Cir. 2005) (tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection)).

The defendant states that the plaintiff is responsible for the delay because he refused treatment on August 10, 2023 for a possible extraction. But the plaintiff's refusal of treatment on August 10 was for a different tooth. On August 1, 2023, the plaintiff submitted a DSR in which he said that his wisdom teeth were coming in and that he wanted them pulled. Dkt. No. 43-2 at 9. The plaintiff was seen on August 10, 2023, and he refused treatment because the tooth or teeth "no longer hurts." Id. at 10. The plaintiff next submitted a DSR on August 14, 2023, stating that he had chipped "a molar on the top right and it needs to be pulled ASAP." Id. at 11. Two weeks later, on August 28, 2023, he submitted the DSR in which he complained of extreme pain and said that he needed the tooth removed, after which the defendant placed him on the essential wait list. The record does not support the defendant's arguments regarding the plaintiff's refusal of dental services.

---

without sharp & shooting pain throughout my mouth, that lasts for hours. Id. at 21. On the same day, he submitted an HSR that said, "Severe dental nerve pain. Cannot eat without sharp, shooting pain throughout mouth." Id. at 22. On November 19, 2023, the plaintiff submitted a DSR that said, "Unbearable dental nerve pain 12 out of 10." Id. at 23. On November 27, 2023, the plaintiff submitted an HSR that said, "I need some more orajel. The pain continues to intensify as the days go by. I cannot eat without being in severe pain. I haven't eaten since 11/25. !URGENT!" Id. at 26.

The defendant contends that the delay in treating the plaintiff did not constitute deliberate indifference because the plaintiff's chipped tooth was not a serious condition, he had access to pain medication and other treatment while he waited and providing treatment was difficult due to the number of incarcerated individuals on the waitlist. Dkt. No. 41 at 12. The court already has determined that the plaintiff had a serious medical need. The court turns to the defendant's argument that the plaintiff had access to pain medication and other treatment during the eighteen weeks before the defendant extracted his tooth.

In response to the plaintiff's DSRs stating he had severe and unbearable dental pain, head pain, a swollen jaw, that he could not eat or sleep and that his chipped tooth had an abscess, the defendant signed DSRs from August 28 through December 18, 2023 stating that the plaintiff had been placed on the essential wait list and that he would be seen "as soon as practical." Dkt. No. 43-2 at 12-13, 16-18, 20, 23, 25-27. The defendant did not see the plaintiff until January 2, 2024, at which time he extracted the plaintiff's tooth. During the eighteen-week delay, the plaintiff apparently had access to over-the-counter pain medication and saw HSU staff three times. Despite having access to over-the-counter pain medication and the defendant's advice to contact the HSU if he experienced swelling or thought he had an infection, the plaintiff continued to submit DSRs describing extreme, unbearable and urgent pain, and not being able to eat. The defendant did not offer any new forms of treatment. Persistence in a course of treatment known to be ineffective can amount to

deliberate indifference. See Reck v. Wexford Health Services, Inc., 27 F.4th 473, 483 (7th Cir. 2022) (citing Greeno v. Daley, 414 F.3d 645, 654-55 (7th Cir. 2005) (reversing grant of summary judgment where defendants repeatedly offered weak medication despite incarcerated individual's protests that the medicine was not working)); see also Petties, 836 F.3d at 729-30.

An inexplicable delay in treatment which serves no penological interest can support an inference of deliberate indifference. Id. at 730 (citing Grieveson, 538 F.3d at 779 (guards could be liable for delaying treatment of broken nose for a day and half); Berry, 604 F.3d at 441 (finding refusal to refer patient to a dentist actionable because "a basic dental examination is not an expensive or unconventional treatment, nor is it esoteric or experimental"); Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). The defendant says that staffing issues at Green Bay prevented him from seeing the plaintiff sooner. But he does not explain why he did not consider the plaintiff's medical condition, in which he complained about increasing severe dental pain and not being able to eat or sleep, as warranting placement on the "urgent wait list" category. Under the DAI Policy 500.40.02, the "urgent" wait list category is reserved for "[d]ental conditions which if not complete in a timely manner, could result in undue pain and suffering. Examples include: moderate post-operative bleeding, pain not relieved by medications, acute oral infections, symptomatic trauma to teeth or jaws, periodontal or periapical

abscess." Dkt. No. 43-1 at 2. The policy provides that "urgent" dental needs shall be scheduled and seen within twenty-four hours or two working days. Id. at 4.

The plaintiff had an objectively serious dental condition. Over the course of eighteen weeks, his pain worsened and he submitted multiple DSRs regarding his pain, inability to eat and swelling. The defendant did not evaluate the plaintiff and repeatedly told him that he would be seen as soon as practical. The defendant saw the plaintiff after eighteen weeks and extracted his tooth. The defendant does not explain why he could not have seen the plaintiff sooner, by for example, prioritizing the plaintiff's dental need as urgent. A reasonable factfinder could conclude that the delay was unreasonable and caused the plaintiff to suffer unnecessarily. See Dobbey v. Mitchell, 806 F.3d 938, 939-40 (7th Cir. 2015) (prison dentist demonstrates deliberate indifference to an incarcerated individual's serious medical need by failing to promptly treat the individual while knowing the patient may well be in serious pain that is treatable); Berry, 605 F.3d at 442-43 (doctor and nurse acted with deliberate indifference for not referring the plaintiff to an offsite dentist for treatment when the jail did not have a dentist; medical records and plaintiff's steady complaints of escalating pain indicate that the delay unreasonably prolonged incarcerated individual's suffering, making summary judgment inappropriate).

The defendant contends that he is entitled to qualified immunity. Qualified immunity "protects government officials from suit for damages when

their conduct does not violate clearly established statutory or constitutional rights." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Determining whether a state official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." Williams v. City of Chicago, 733 F.3d 749, 758 (7th Cir. 2013). If either inquiry can be answered in the negative, the official is entitled to summary judgment.

A constitutional right is clearly established if "the right in question [is] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Lindell v. Pollard, 558 F. Supp. 3d 734, 744 (E.D. Wis. 2021) (quoting Weinmann v. McClone, 787 F.3d 444, 450 (7th Cir. 2015). "[T]he clearly established right must be defined with specificity." Id. (citing City of Escondido v. Emmons, 586 U.S. 38, 42 (2019)). The court should "analyze whether precedent squarely governs the facts at issue, mindful that [courts] cannot define clearly established law at too high a level of generality." Id. at 744-45 (quoting Strand v. Minchuk, 910 F.3d 909, 917 (7th Cir. 2018)).

The defendant contends that the plaintiff cannot overcome qualified immunity because he cannot point to a case showing that the defendant was constitutionally required to attend to the plaintiff's medical needs "exactly as [the plaintiff] alleges [the defendant] should have (i.e. [the defendant] was required to extract [the plaintiff's] tooth within eight weeks)." Dkt. No. 41 at 15. According to the defendant, the plaintiff cannot meet this burden, and

"multiple cases cited in [the defendant's] brief show the opposite is true." Id. Cases cited in the defendant's brief support his contention that a chipped tooth is not a serious medical condition and that the plaintiff's refusal of treatment on August 10, 2023 disproves his deliberate indifference claim. But the court has found that the plaintiff's medical condition *did* qualify as an objectively serious medical need and that the plaintiff's refusal of treatment on August 10 was for a different tooth. A reasonable factfinder could conclude that the defendant violated the plaintiff's constitutional rights by waiting eighteen weeks to evaluate the plaintiff given the seriousness of his dental condition. Under the Dobbey and Berry cases, it is clearly established that allowing an incarcerated individual who has a serious dental condition to suffer in pain unnecessarily amounts to deliberate indifference. See supra. at 13. The defendant is not entitled to qualified immunity.

## III. Conclusion

The court **DENIES** the defendant's motion for summary judgment. Dkt. No. 40.

The court **ORDERS** that the parties must appear for a telephone status conference on **September 8, 2026 at 10:00 AM** to discuss the next steps in the case. The defendant is to appear by calling the court's conference line at 551-285-1373 and entering Meeting ID 161 4901 8989 and Passcode 190021when prompted. The court has made arrangements with Waupun

Correctional Institution for the plaintiff's appearance at the hearing.

Dated in Milwaukee, Wisconsin this 4th day of August, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**